**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ROBERT DALE WARE,** | § | |
| **Petitioner** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-06-258** |
| | § | |
| **NATHANIEL QUARTERMAN,** | § | |
| **DIRECTOR, TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE--** | § | |
| **INSTITUTIONAL DIVISION,** | § | |
| **Respondent** | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the Michael Unit in Tennessee Colony, Texas. At the time he filed this action, he was incarcerated at the McConnell Unit in Beeville, Bee County, Texas and the actions about which he complains occurred on the McConnell Unit. Proceeding *pro se* and *in forma pauperis*, petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 11, 2006 (D.E. 1). Petitioner makes the following due process claims in reference to a disciplinary hearing which resulted in the imposition of punishment: (1) He did not receive fair or appropriate punishment and (2) The warden wrongfully changed his classification status. Respondent filed a motion to dismiss on August 14, 2006 (D.E. 9) to which petitioner responded on August 30 and September 7, 2006 (D.E. 14, 15, 16).

## JURISDICTION

Petitioner was incarcerated at the McConnell Unit in Beeville, Texas at the time he filed his petition and this Court has jurisdiction over his petition. 28 U.S.C. § 2241(d); Wadsworth v. Johnson, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a 20-year sentence for rape and a five-year sentence for failure to comply with sex offender registration requirements. Petitioner was convicted on the rape charge in the 78th Judicial District Court of Wichita County, Texas for an offense committed on September 17, 1978 and his sentence will cease to operate on November 18, 2006 when he reaches the maximum expiration date. Petitioner was convicted on the failure to comply charge in the 262nd Judicial District Court of Harris County, Texas for an offense committed on February 27, 2002 and he currently has a calculated discharge date of January 16, 2008 (Aff. of Sandy Pickell, D.E. 9-2, Ex. B).

Petitioner does not complain about his holding convictions, but challenges the results of six disciplinary hearings: disciplinary case numbers 20050250393, 20050250390, 20050253451, 20050253507, 2005025667, 20050258090, all of which were based on petitioner's refusal to either attend the academic program in which he was enrolled or go to his job. In his motion for summary judgment, respondent argues that because petitioner is not eligible for release to mandatory supervision he cannot make out a habeas corpus cause of action. Petitioner counters that he should be eligible for release to mandatory supervision. Respondent reserved his right to argue that petitioner has not exhausted his administrative remedies and that he has procedurally defaulted his claims.

## APPLICABLE LAW

### A. Due Process Rights

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In Sandin v.

Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. (internal citations omitted). The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 486, 115 S.Ct. at 2301. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. Id.

**1. Reduction in Line Class**

In disciplinary case number 20050253451, part of petitioner's punishment was a reduction in line class from S3 to S4 (Disp. Hrg. Recs., D.E. 10-2, at 11). In case number 20050253507 his line class was reduced from S4 to L1 (Id.). In case number 20050256667 his line class was reduced from L1 to L2 and in case number 20050258090 petitioner's line class was reduced from L2 to L3 (Id.). To the extent petitioner is complaining that the lowering of his line class will effect his parole eligibility, he fails to state a basis of relief. Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have

an effect on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), cert. denied sub nom. Luken v. Johnson, 116 S.Ct. 1690 (1996). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)). See also Malchi v. Thaler, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Accordingly, petitioner is not entitled to habeas corpus relief based on his line class status.

**2. Loss of Good Time Credits**

Some Texas inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)). A prisoner's release date is based in part on good time credits earned by him which are added to his actual days served in prison. TEX. GOV'T CODE ANN. §508.147 (Vernon 2002). In this case, petitioner, who had earned good time credits, was punished with the loss of a total of 60 days of good time in disciplinary cases 20050258090 and 20050256667 (Disp. Hrg. Recs., D.E. 10-2, at 11).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release. Malchi v. Thaler, 211

F.3d 953, 957-958 (5th Cir. 2000). The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest. Hudson v. Johnson, 242 F.3d 534, 536, n. 1. However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does. Id. at 536. Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision. Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Some inmates are not eligible for release to mandatory supervision because of the nature of their offense. In his original petition, petitioner indicated that he is eligible for release to mandatory supervision (D.E. 1, p. 5). Respondent avers that petitioner is not eligible for release to mandatory supervision because he has been convicted of a first degree felony under Section 22.021 of the Texas Penal Code, citing in support TEX. GOV'T CODE ANN. §508.149(a)(8)(West 2003). However, according to petitioner's commitment inquiry, he was convicted of sexual assault, a second degree felony under Section 22.011 of the penal code, rather than Section 22.021 (first degree aggravated sexual assault). Nevertheless, under TEX. GOV'T CODE ANN. §508.1499a)(6),[1] petitioner is not eligible for release to mandatory supervision.

Respondent acknowledges that petitioner received a letter on January 10, 2005 informing him that he was eligible for release to mandatory supervision, subject to a determination by the Board of Pardons and Parole that he was a good candidate for release (D.E. 1, p. 34; D.E. 9, p. 1,

---

[1]An inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of: . . . a second degree felony under Section 22.011, Penal Code.

n. 7). However, respondent asserts that the letter was sent by mistake to petitioner and that he is ineligible for release to mandatory supervision because of his sexual assault conviction (Pickell Aff., Ex. B. to Mot. to Dism.; D.E. 9-2 at 5). If a petitioner is not eligible for release to mandatory supervision, he cannot make out a claim that good time credits were taken from him without due process because he does not have a liberty interest in accruing them. Because it does not appear that petitioner was eligible for release to mandatory supervision, he has failed to make out a claim that he is entitled to habeas corpus relief.

In the alternative, even if petitioner were eligible for mandatory release, the record shows that he received the due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). There, the Court held that an inmate who has a liberty interest at stake is entitled to the following process during a disciplinary proceeding: (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision. Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.

In both instances in which petitioner lost good time, he received written notice of the cases, declined to attend the hearing or call witnesses, and the hearing officer found him guilty of the offense based on the charging officers report (Disp. Hrg. Recs., D.E. 10-1 at 26 and 37). Accordingly, petitioner cannot prevail on his claim that his constitutional rights were violated because he received all of the procedural due process to which he was entitled.

**C. Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

**RECOMMENDATION**

Based on the foregoing, it is recommended that respondent's motion to dismiss (D.E. 9) be granted and petitioner's cause of action for habeas corpus relief be denied. It is further recommended that should petitioner seek a Certificate of Appealability, it be denied.

Respectfully submitted this 28th day of September, 2006.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).